**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.                                      Criminal Action No. 3:13-cr-33-02

**DARNELL LEON PLAINES,**
a/k/a "Smalls,"

    **Defendant.**

**REPORT AND RECOMMENDATION THAT DEFENDANT'S
MOTION TO SUPPRESS [121] BE DENIED**

**I. INTRODUCTION**

This matter comes before the Court on Defendant Darnell Leon Plaines' Motion to Suppress. (Def.'s Mot., Feb. 14, 2014, ECF No. 121). On February 19, 2014, the United States of America (hereinafter, "the Government") filed its response to Defendant's Motion. (Resp., Feb. 19, 2014, ECF No. 126). On March 4, 2014, the Court held an evidentiary hearing and argument on Defendant's Motion. Defendant appeared in person and by counsel, Paul Taylor, Esquire. The Government was present by Jarod Douglas, Assistant United States Attorney, appearing on behalf of Assistant United States Attorney, Stephen L. Vogrin. At the hearing, both Defendant and the Government called Sergeant Matthew Zollinger as a witness and the Government called Patrolman Shane Everhart, Sergeant Frank Polinik and Detective Jared Luciano as additional witnesses. The Court also admitted three exhibits submitted by the Government: the rental application for the apartment searched (Gov't Ex. 1), the Residential Lease Agreement for the apartment searched (Gov't Ex. 2), and the Search Warrant and property

receipt of items seized (Gov't Ex. 3). (*See* Witness and Ex. List, ECF No. 166). No additional testimony or other evidence was presented.

### A. Background

Defendant, Darnell Leon Plains, is one of four defendants in a seven (7) count Indictment, plus forfeiture allegation, relating to the distribution of cocaine base in or near Martinsburg, West Virginia. (Indictment, ECF No. 1). Defendant is only named in Count One (1) of the Indictment, which charges three (3) defendants with conspiracy to possess with intent to distribute and to distribute twenty-eight (28) grams or more of cocaine base, also known as crack, from approximately April 2013 to May 10, 2013 in or near Martinsburg, West Virginia. (*Id.* at 1-2).

### B. The Motion

Defendant's Motion to Suppress (ECF No. 121).

### C. Recommendation

I respectfully recommend that Defendant's Motion to Suppress (ECF No. 121) be **DENIED** because the warrantless protective sweep of the apartment was justified by the emergency exception and law enforcement officers properly obtained a search warrant for the items subsequently seized. Additionally, the Court finds that Defendant did not make any statements to law enforcement at the time the officers entered the apartment on May 10, 2013 or during the search the same day. Therefore, there are no out-of-court statements made by Defendant on May 10, 2013 to suppress.

## II. FACTS

On May 10, 2013, at approximately 12:42 a.m., officers from the Martinsburg Police Department ("MPD") responded to an alleged stabbing at 409 West Race Street, Martinsburg, West Virginia. When officers arrived at the scene, they met with medical personnel who were

outside of the apartment complex looking for a subject who was alleged to be stabbed at the location. The medics at the scene had keys to enter the common area of the apartment complex and unlocked the doors for officers. Once inside the common area, officers noticed blood and followed a trail of blood up the common stairwell to the second floor. The blood trail continued to Apartment No. 12 where officers noticed blood on the front door.[1]

Officers knocked on the apartment door, identified themselves as law enforcement looking for a stabbing victim and asked that they be allowed to enter the apartment. Even though no one answered the door, officers heard the sound of someone moving around inside of the apartment. Officers did not hear anyone speaking inside the apartment. Officers then heard feet shuffling close to the door and someone attempted to turn the door knob from inside the apartment. Officers continued to request that the occupant open the door and after no response officers attempted to force entry. After several unsuccessful attempts, officers obtained a breaching tool from the medics and forcefully entered the apartment.

Once inside the apartment, officers entered the living room and saw three individuals, two females and Defendant Plaines, sitting on two mattresses in the common area. The officers asked the individuals if there were an injured person in the home and they responded in the negative. Neither Defendant nor the two females made any additional statements at this time. Officers did a protective sweep of the other rooms on the first floor, which included the kitchen, bathroom and a bedroom. Officers also did a protective sweep of the upstairs loft, which was being used as a bedroom. While searching for the injured person upstairs, officers saw various contraband in plain view, including a firearm on the bed, a digital scale with white residue on the nightstand and a box of sandwich baggies on the floor. Officers did not locate an injured person

---

[1] The apartment was leased to the two co-defendants in this case, Timothy Williams and Derrick Wells, who are brothers. (*See* Gov't Ex. 1 and 2).

in the apartment. Defendant and the two females were moved outside of the apartment. After gathering his contact information, Defendant was allowed to leave the scene. Officers did not interview Defendant that night.

Based on the items identified in plain view, officers obtained and executed a state search warrant for the apartment. In the upstairs bedroom, officers located and seized firearms, firearm parts, a large amount of cocaine base, a digital scale, a receipt for a storage unit leased to Timothy Williams and two identification cards belonging to Timothy Williams and Derrick Wells. Officers found no contraband in the kitchen or bathroom. In the first floor bedroom, officers found approximately $3,400 in cash in a shoe and another firearm. In the living room, officers located and seized approximately twenty-one (21) individual bags of crack cocaine, containing approximately half a gram of cocaine base each, from the television stand situated between the two mattresses.[2]

### III. DISCUSSION

**A. Contentions of the Parties**

Defendant's Motion to Suppress generally contends that any and all evidence seized from "any premises in which Defendant has a reasonable expectation of privacy" must be suppressed because the searches were illegal "in that they were either conducted without a warrant and without other sufficient legal justification." (Def.'s Mot. to Suppress, ECF No. 121 at 1). Defendant further argues that any search conducted with a warrant was illegal because the "warrant was insufficient on its face and the information contained in the affidavit for said search warrant failed to establish that probable cause existed for the issuance of said warrant." (*Id.*). At the hearing, Defendant specified that he is seeking to suppress any items seized at the apartment.

---

[2] Based on the testimony provided, other items may have been located and seized from the living room, including pills. An officer also testified that marijuana and/or marijuana paraphernalia was also in plain view in the living room when they first entered the apartment but the property receipt from the search warrant does not appear to list such items. (*See* Gov't Ex. 3).

Additionally, Defendant requests that any statements made by Defendant in furtherance of the conspiracy at the time the officers entered the apartment be suppressed. (*Id.*).

First, the Government states that the present Motion is untimely and should be denied outright because the Court's pretrial motions deadline was set for January 24, 2014 and Defendant filed the motion on February 14, 2014. Second, the Government contends that Defendant has no reasonable expectation of privacy in the apartment, which belonged to Timothy Williams and Derrick Wells, and thus lacks standing to challenge the search of the apartment. (Opp'n to Def.'s Mot., ECF No. 126 at 11). The Government argues that even though Defendant was sleeping on a mattress in the living room, he was merely a "guest engaged in the business of drug distribution" while staying at the apartment and the Fourth Circuit has held that "in the context of a drug conspiracy, a guest involved in drug dealing at a residence is considered to be a 'business, not a social, guest' of the residence and therefore has no expectation of privacy." (*Id.* at 9, 11) (citing *United States v. Gray*, 491 F.3d 138, 146-47 (4th Cir. 2007)). Third, the Government argues that warrantless search of the apartment was justified by the emergency exception to the warrant requirement. (*Id.* at 12). Fourth, the Government contends that the search warrant is procedurally and substantively valid. (*Id.* at 13). Lastly, the Government states that it is "unaware of any inculpatory statements Plaines made to law enforcement upon entry into the apartment." (*Id.* at 14). Moreover, even if statements were made, Defendant was not in custody not under arrest and therefore any statements were not in violation of *Miranda* and would be admissible. (*Id.*).

B. **Legal Analysis**

   1. **Untimeliness of Motion**

   According to the Initial Scheduling Order, motions were due on January 24, 2014, responses due by February 3, 2014 with the motions hearing to be set on February 4, 2014. (ECF

No. 95). Defendant filed his Motion to Suppress on February 14, 2014. (ECF No. 121). Despite the Motion being filed after the deadline provided by the Initial Scheduling Order, the Court elected to proceed with an evidentiary hearing and argument on the Motion. Moreover, neither party addressed the timeliness of the Motion at the evidentiary hearing on March 4, 2014. Therefore, the Court will consider the Motion on the merits.

    **2. Standing/Reasonable Expectation of Privacy**

The Fourth Amendment is implicated when a government agent conducts a search in violation of an individual's "reasonable expectation of privacy" in a protected area or item. A person has a constitutionally protected reasonable expectation of privacy when the person demonstrates a subjective expectation of privacy and the person's expectation of privacy is one that society considers objectively reasonable. *See Katz v. United States*, 389 U.S. 347, 361, 88 S. Ct. 507, 516 (1967). For example, a person has a reasonable expectation of privacy in one's home and personal belongings. (*Id.*).

In order to challenge a search under the Fourth Amendment, the person must have a "reasonable expectation of privacy" in the item or place that was searched. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *see also Alderman v. United States*, 394 U.S. 165, 174, 89 S. Ct. 961, 966 (1969) (stating that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S. Ct. 421, 425 (1978). In this sense, a person must have "standing" in order to challenge a search and seizure under the Fourth Amendment.

While a person typically does not have standing to challenge a search and seizure of another person's home, there are situations where a person "may have a legitimate expectation of

privacy in the house of someone else." *Minnesota v. Carter*, 525 U.S. 83, 89 (1998). For example, the Supreme Court found that "an overnight guest has a legitimate expectation of privacy in his host's home." *Minnesota v. Olson*, 495 U.S. 91, 110 S. Ct. 1684 (1990). The Supreme Court further clarified that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Carter*, 525 U.S. at 90. Similarly, in *Jones*, the Supreme Court found that the defendant had a reasonable expectation of privacy in another's apartment because he had been given use of the apartment by a friend, kept clothing at the apartment, slept in the apartment for "maybe a night" and at the time of the search was the sole occupant of the apartment. *Jones v. United States*, 362 U.S. 257, 259, 80 S. Ct. 725 (1960). Unlike overnight guests or residents, those "essentially present for a business transaction" and "only in the home a matter of hours" do not have a reasonable expectation of privacy in another person's home. *Carter*, 525 U.S. at 90. Moreover, a person present in the home of another person for the purpose of distributing drugs does not have a reasonable expectation of privacy and therefore lacks standing to challenge an unlawful search. *Gray*, 491 F.3d at 146-47.

  During the evidentiary hearing, Sgt. Zollinger's testimony indicated that Defendant Plaines occupied the common space of the living room. While Williams and Wells were the only two individuals named in the rental application and lease agreement, the parties do not dispute that there were mattresses and bedding on the floor where Defendant Plaines was found. The Government also stated in their Opposition to Defendant's Motion that Ms. Paxton advised police that "Plaines slept on the box spring and mattress downstairs." (Opp'n to Def.'s Mot., ECF No. 126 at 5). Defendant Plaines was also a resident of Brooklyn, New York and no evidence was presented indicating he had a permanent residence at another location in West

Virginia. The Court finds that this evidence suggests that Defendant Plaines was an overnight guest at the apartment, at least on a temporary basis, rather than merely being present at the apartment for "business" related to drug distribution. Accordingly, Defendant Plaines, as an overnight guest, has an expectation of privacy in the common area he occupied at the residence.

### 3. Emergency Aid Exception to Warrant Requirement

The cornerstone of the Fourth Amendment is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions*." Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967). Thus, "[t]he Fourth Amendment generally requires police to secure a warrant before conducting a search. A warrantless search may nevertheless be valid, and the evidence obtained from that search may be admissible, if the search falls within one of the narrow and well-delineated exceptions to the Fourth Amendment's warrant requirement." *United States v. Matthews*, 591 F.3d 230, 234-35 (4th Cir. 2009) (internal quotations and citations omitted). One of the specified exceptions to the warrant requirement is the presence of exigent circumstances, such as the belief that a person is seriously injured and in need of emergency aid. *See Mincey v. Arizona*, 437 U.S. 385, 392, 98 S. Ct. 2408, 2413 (1978) (explaining that "the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid."). "Thus, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. This emergency aid exception does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises. It requires only an objectively reasonable basis for believing that a person within [the house] is in need of

immediate aid." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (internal quotations and citations omitted).

In the present case, law enforcement officers first arrived at the scene in response to an alleged stabbing. After entering the apartment complex, officers saw blood in the common area and followed a trail of blood to Apartment No. 12 on the second floor. The door to Apartment 12 was covered in blood. After knocking and identifying themselves as law enforcement, officers heard the shuffling of feet inside the apartment and noticed an occupant attempting to turn the door knob. Despite their repeated requests, no one opened the door requiring the officers to forcefully enter the apartment in order to locate the victim of the stabbing. The Court finds that based on these facts, the officers had an objectively reasonable basis for believing that a person inside Apartment No. 12 was in need of immediate medical attention. Once inside the apartment, the officers reasonably conducted a sweep of the apartment in order to locate the stabbing victim. Accordingly, the emergency aid exception to the warrant requirement applies and the warrantless search of the apartment was lawful.

**4. Search Warrant**

In order for a search and seizure by a government agent to be valid under the Fourth Amendment, the search warrant must be both procedurally and substantially valid. In order to be procedurally valid, the search warrant must "specify with particularity the place to be searched and the things to be seized." *Andresen v. Maryland*, 427 U.S. 463, 492, 96 S. Ct. 2737, 2754 (1976). Substantively, a warrant must be supported by probable cause. Probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause exists where "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy

information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed." *Draper v. United States*, 358 U.S. 307, 313 (1959).

In the present case, the West Virginia search warrant obtained by Detective Luciano states with sufficient particularity the place to be searched and the items to be seized. The search warrant is accompanied by a list of eight (8) items to be seized, including controlled substances, currency, firearms and ammunition, personal identifiers, drug paraphernalia, and other evidence of drug trafficking. (Gov't Ex. 3 at 2). The affidavit attached with the search warrant describes the place to be searched as the residence located at 409 West Race St. Apartment 12 in Martinsburg, West Virginia. (*Id.* at 6). The Court finds that the search warrant properly lists with particularity the items to be seized and the location to the searched.

Second, probable cause existed to justify the search warrant. As described in the affidavit in support of the search warrant, officers identified numerous items in plain view upon entering the apartment. (Gov't Ex. 3 at 3-6). Specifically, police officers saw small individual plastic baggies, packaged pills, large ammunition magazine, a firearm, two pistol clips and drug paraphernalia. (*Id.*). The Court finds that the affidavit establishes probable cause to believe that additional contraband would be found inside the apartment. Accordingly, the search was conducted with a valid search warrant.

### 5. Defendant's Statements

The Supreme Court of the United States has determined that "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 467, 444 (1966). The remedy for the failure to give *Miranda* warnings and obtain a waiver before questioning is generally the

exclusion, or the suppression, of any obtained statements. *Missouri v. Seibert*, 542 U.S. 600, 608 (2004).

Based on the evidence presented, the Court finds that Defendant Plaines did not make any out-of-court statements to law enforcement at the time police were attempting to gain entry to the apartment or shortly after police entered the apartment. None of the officers testifying at the evidentiary hearing claimed that Defendant made any statements in furtherance of the conspiracy to law enforcement officers. Therefore, it is recommended the Motion to Suppress any out-of-court statements made by Defendant be **DENIED** as moot.

## IV. **RECOMMENDATION**

I recommend that Defendant's Motion to Suppress (ECF No. 121) be **DENIED** because the warrantless search of the apartment was justified by exigent circumstances, the state search warrant was valid, and Defendant did not make any out-of-court statements to law enforcement officers at the time they entered the apartment.

Any party may file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. Objections are due at the pretrial conference scheduled before the Honorable Gina M. Groh on Thursday, March 6, 2014. A copy of such objections should also be submitted to the District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in a waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable.

**DATED**: March 5, 2014

*/s/ James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE